IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:17-cr-331-WKW |
| | ) | [wo] |
| STEVEN LEE LANE | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States

Magistrate Judge for review and submission of a report with recommended findings of fact and

conclusions of law.  The defendant, Steven Lee Lane ("Lane" or "Defendant") was charged in an

indictment returned on July 26, 2017.  The Indictment charged Lane possession with one count of

intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), the use, carry, and possession of

a firearm in furtherance of the intent to distribute in violation of 18 U.S.C. § 924(c)(1)(A)(i), and

possession of a firearm as a person previously convicted of a felony offense in violation of 18

U.S.C. § 922(g)(1).  *See* Doc. 1.  Now pending before the court is Defendant's Motion to Suppress

Evidence (Doc. 20, filed November 7, 2017).  The Government timely filed its response (Doc. 28,

filed November 22, 2017).  The Court convened a hearing on November 30, 2017.  Post-hearing,

the Defendant submitted a copy of the Application and Affidavit for Search Warrant relating to

the motion to suppress.  *See* Doc. 33.  Based on the evidence presented to the Court, arguments of

the parties, and for the reasons set forth herein, the Magistrate Judge recommends that the motion

to suppress be DENIED.

## I.    BACKGROUND

On September 20, 2016, Dothan Police Officer Sergeant Robert Cole ("SGT Cole") sought

and received from the Houston County, District Court a search warrant authorizing him to search

the defendant's home.  The affidavit to establish probable cause stated:

> On 9-20-2016 I was contacted by a reliable and confidential informant who advised me that cocaine is being kept and sold from the residence and vehicles at 409 E. Lafayette Street by a black male name Steven Lane.  The CI stated that he/she has seen the drugs at the residence and the sale of the drugs from residence and out of vehicle in the yard in the past 72 hours.  The CI stated he/she witnessed Steven sale [sic] the cocaine out of the residence as well as he going to different vehicle in the yard where he has it stashed to get it out to sale [sic]. The CI has provided information in the past leading to arrest for possession of marijuana 1st, possession of cocaine, trafficking cocaine as well as information leading to arrest for a shooting suspect.

*See* Doc. 33, Ex. 1 at p. 1.  Based on this information, Judge Kevin Moulton issued a search warrant on September 20, 2016.  *Id*.  On September 22, 2016, Cole and other officers executed the search warrant and caught Lane red-handed in the process of converting powder cocaine into cocaine base.

## II.   MOTION TO SUPPRESS AND HEARING

In his motion to suppress, Lane asserts two arguments.  Specifically, he first argues the affidavit in support of the search warrant failed to contain sufficient facts to support a finding of probable cause and second that Corporal Cole relied upon statements of a "snitch" that he should have known were false.  *See* Doc. 20 at p. 2. Primarily, Lane attacks the reliability of the information in the search warrant executed at his home.  Lane states that though the United States has not identified the confidential information (or as he states "snitch") that he suspects he knows who it is.  He further argues that supposed person had a motive to falsify the information provided and also previously provided unreliable information to law enforcement which Corporal Cole should have known.  *Id*. at p. 3.  Defendant asks the court to suppress any evidence seized from his home in Dothan, Alabama during the execution of the search warrant.

At the November 30, 2017 hearing, Defendant presented two witnesses in support of his motion to suppress.  First, Defendant Lane testified for the limited purpose of the motion to

suppress.   Defendant testified that he believed the confidential informant ("CI") to be Tamara Williams.  Tamara Williams was his ex-girlfriend and mother of his son.  Lane testified that a few days prior to the execution of the search warrant, he had refused to provide Ms. Williams money for her light bill.  Consequently, she grew angry and threatened to call the police on him.  Next, his current girlfriend Julia Duncan testified that she lived with Defendant Lane on the dates in question.  She testified only she, Lane, and her 14-year old daughter had access to the home.  She further testified that Ms. Williams had called her to complain about the money and said "he was going to get what's coming to him and just saying all kind of crazy things."

Next, the Government presented SGT Cole[1] for testimony.  Cole testified that the CI was not Tamara Williams and that in the past, the CI gave him narcotics related intelligence 10 or 12 times and the intelligence led to narcotics arrests and convictions.  In addition, the same CI had given Corporal Cole information which allowed law enforcement to locate and arrest an attempted murder suspect which lead to an arrest.  Finally, the CI has given Corporal Cole information on cases which are still pending.  With respect to Lane, the CI told Cole that within the last 72 hours the CI had seen Lane go in and out of the premises with cocaine and sell it to customers.  In addition, the CI said he saw Lane retrieve cocaine from the trunk of various cars at the premises and sell that cocaine to customers. Cole testified that disclosing the identity of the CI would compromise the ability of law enforcement to further use the CI and put the CI's life at risk.  After receiving the information, Cole went by the location and verified that Lane indeed lived at the residence and that there were various cars parked in the yard around the residence.  Cole also confirmed Lane owned the property and did some background information.  Further, Cole confirmed the CI's description of the home was accurate.  As a result of the information, Cole

---

[1]        SGT Cole testified that in September 2016 he was a Corporal in the narcotics division of the Dothan Police Department.

prepared the affidavit and search warrant and presented it to Judge Kevin Moulton.

Upon executing the search warrant, Cole found Lane getting ready to whip powder cocaine up into crack.  He further found cocaine, two pistols, synthetic marijuana, and $1,257.00.

### III. DISCUSSION AND ANALYSIS

The Fourth Amendment guards "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  Warrantless searches and seizures are per se unreasonable unless an exception applies.  *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted).  The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights" by prohibiting the use of illegally seized evidence in criminal prosecutions. *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).  The rule is designed to deter misconduct by law enforcement by banning evidence obtained in violation of the Fourth Amendment.  *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing *Nix v. Williams*, 467 U.S. 431, 442-43, 104 S. Ct. 2501, 2508, 81 L. Ed. 2d 377 (1984)).

The United States Supreme Court determined "[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause the Fourth Amendment requires that a hearing be held at the defendant's request."  *Franks*, 438 U.S. at 155-56, 98 S. Ct. at 2676.  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."  *Id*. at 171-72, 98 S. Ct. at 2684-85; *see also United States v. Novaton*, 271 F.3d 968, 986 (11th Cir.

2001) (quoting *Franks* and applying its analysis when evaluating an affidavit offered in support of a wiretap order).

A.      **Need for a *Franks* Hearing / Identity of the CI**

Lane sought disclosure of the informants' identity because he wished to challenge the validity of the affidavit in support of the search warrant that, when executed, produced evidence of his alleged crime.   Defendant's argument centered around the fact that if the CI was Tamara Williams the information provided by the CI and used in Officer Cole's affidavit for the search warrant is not credible because Williams had a financial motive to falsify the information she gave to Cole.   Defendant asserts that because of this ill will, the CI has previously provided false information to law enforcement—as the CI has done again in this case—and that law enforcement knew or should have known the CI to be unreliable at the time Officer Cole submitted his affidavit in support of the search warrant. Based upon these conjectures, Lane sought to compel the Government to disclose the identities of the CI.

(i)      ***Franks* Hearing**

Under the Fourth Amendment, a search warrant must be supported by a sworn affidavit containing information that "is believed or appropriately accepted by the affiant as true."   *Franks v. Delaware,* 438 U.S. 154, 165, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978).   Search warrants and their affidavits are presumptively valid.   *See United States v. Lebowitz,* 676 F.3d 1000, 1010 (11th Cir. 2012) (citing *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011)).

The United States Supreme Court determined "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause the Fourth Amendment requires that a hearing be held

at the defendant's request." *Franks*, 438 U.S. at 155-56, 98 S. Ct. at 2676.  A defendant who satisfies both prongs is entitled to an evidentiary hearing on the matter. *See United States v. Arbolaez,* 450 F.3d 1283, 1293 (11th Cir. 2006).  The Eleventh Circuit has noted that the substantiality requirement to warrant a *Franks* hearing is not lightly met.  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. at 171-72, 98 S. Ct. at 2684-85; *see also United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001) (quoting *Franks* and applying its analysis when evaluating an affidavit offered in support of a wiretap order).  Without a specific allegation of false statements or material omissions by government agents supported by an offer of proof, a hearing is not necessary to determine the necessity issue.  Defendant make no such specific assertions accompanying by an offer of proof.  Rather, Defendant asserts that if the CI was Tamara Williams then she was known to have previously submitted false information to the police which Cole should have known.  Therefore, the allegation hinges on the identity of the CI being Tamara Williams and Cole's reckless disregard for the truth as to statements given by Ms. Williams.  It is questionable whether Defendant has carried his burden to have a *Franks* evidentiary hearing.  However, even if Defendant failed in his burden, while the law does not mandate a hearing, there is nothing which precludes the Court from holding one.  As such, out of abundance of caution and given the lengthy sentence this defendant may face if convicted, the Court elected to hold a hearing.

Upon learning that the CI was not Tamara Williams, defense counsel conceded that his original argument hinging upon Williams' falsity failed.  Further, as noted at the hearing and discussed in the next subsection, Defendant conceded that he is not entitled to the identity of the

CI based on the information currently before the Court.  The Court would have denied the request in any event.

### (ii)    CI Disclosure - *Gutierrez* balancing test.

The Government possesses a privilege to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officials.  *Roviaro v. United States,* 353 U.S. 53, 59-61, 77 S. Ct. 623, 627-28, 1 L.Ed.2d 639 (1957).  However, a limitation on the privilege "arises from the fundamental requirements of fairness" and "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  *Id.* at 60-61; *see also United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009) ("The government's privilege to withhold the identity of a confidential informant is limited.").  In those situations, the privilege must give way.  *Id.*  Since *Roviaro,* the Eleventh Circuit has identified three factors for a court to apply when balancing the interests in disclosure with the interests in nondisclosure of a CI's identity.  *Flores*, 572 F.3d at 1265; *United States v. Gutierrez,* 931 F.2d 1482, 1490 (11th Cir. 1991) (quoting *United States v. Tenorio-Angel,* 756 F.2d 1505, 1509 (11th Cir. 1985)).  Specifically, the factors are (1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure.  *Id.*; *see also United States v. Johnson*, --- F. App'x ---, 2017 U.S. App. LEXIS 12345, *2-3. 2017 WL 2954570, *1 (11th Cir. Jul. 11, 2017) (reiterating 3 factors and citing *Flores* and *Gutierrez*).  Ultimately, the burden is on the defendant to show that the CI's testimony would significantly aid in establishing an asserted defense.  *United States v. Moore*, 611 F. App'x 572, 575 (11th Cir. May 15, 2015 (*quoting Gutierrez*).  Further, "[m]ere conjecture about the possible relevance of [the CI's]

testimony is insufficient to compel disclosure." *Gutierrez*, 931 F.2d at 1491.

At present, none of the three factors weigh in favor of disclosure which Defendant seemingly acknowledges with the concession that they are no longer entitled to the identity of the CI since it is not who they believed him/her to be. Thus, Defendant fails to demonstrate how disclosure of the CI's identity would "significantly aid in establishing his asserted defense." In a brief analysis of the factors, first the government has proffered legitimate interests in nondisclosure, including the CI's safety and involvement in other ongoing investigations. Next, there is currently no information before the Court which indicates the CI played an active or prominent role in the criminal activity. Nor is there information regarding the directness of the defendant's asserted defense and the probable testimony of the information. Rather, the only asserted basis for disclosure was for use in the suppression of the information found pursuant to the search warrant. As established at the hearing, that basis was faulty. "[T]he rule is well-established that the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant." *United States v. Mendoza*, 433 F.2d 891, 894 (5th Cir. 1970) (citations omitted);[2] *United States v. Cartwright*, 183 F. Supp. 3d 1348, 1359 (M.D. Ga. 2016); *see also United States v. Booker,* 131 F. App'x 234, 241 (11th Cir. 2005) (denying request for disclosure where the CI's testimony would only have been relevant for determining whether there was probable cause to search the defendant's residence).

Here, Lane clearly attempts to challenge the probable cause supporting the issuance of the state court search warrant by attacking the validity of the underlying affidavit and its reliance upon

---

[2]    *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

the CI.  Lane is not seeking the identity of the CI to provide for his defense of guilt or innocence, but rather solely seeks the CI's identity to attack probable cause.  Thus, according to the Eleventh Circuit rule, the Government need not disclose the identity of the CI who provided the basis for probable cause for the warrant to issue.  Therefore, based on the above the *Gutierrez* factors weigh against Defendant's interest in disclosure and the scales tip heavily in favor of the Government's interest in preventing disclosure.  Thus, the Court concludes that the Government's privilege in nondisclosure does not give way, and that Defendant is not entitled to ascertain the identity of the CI.

**B.**     **Probable Cause**

Despite the failure of the CI argument, Defendant still argues that he has a basis for suppression.  Specifically, at the hearing, Defendant now argues the affidavit still lacks probable cause because it is disingenuous, false, and misleading because ultimately the CI had not been inside the house though it gives the impression that the CI had been in the house.  Further, he still argues that the search warrant lacks probable cause based on that impression and the lack of any information to gauge the veracity, reliability and basis of knowledge of the CI.

"Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); *see also Zargari v. United States*, 2016 U.S. App. 17329 (11th Cir. Sep 22, 2016) (quoting *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984)) (Probable cause exists "where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has

been or is being committed.").  It is a common sense and practical determination synthesized from facts and inferences which may reasonably and logically drawn from facts known.  *See United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (citing *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332).  "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observations." *United States v. Jenkins*, 901 F.2d 1075, 1080 (quoting *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982)).

Based on this totality of the circumstances approach, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [judges] in their probably cause determination." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citations omitted).

In the case at hand, Defendant asserts that the CI was never inside Lane's house and therefore the affidavit in support of the search warrant was misleading.  Defendant argues that the information is worded to lead the reader to believe that "the snitch had been in the house and seen somebody sell cocaine out of the house."  He argues this false and misleading information would induce the magistrate to sign the warrant.  The Government argues that the language is not required to be viewed as restrictively as Defendant suggests.  Rather, the affidavit says "at" and not "in" the residence.

In the case at hand, at the most minimalist view, the search warrant affidavit reveals the CI stated that he/she "has seen drugs at the residence and the sale of the drugs from the residence as well as he [sic] going to difference vehicle [sic] in the yard where he has it stashed to get it out to

sale [sic]." *See* Doc. 33, Exhibit 1 at p. 1.  The facts within the four corners of the affidavit and the inferences to be drawn from the facts stretch well beyond the bare minimalist interpretation Lane urges upon the court.  Simply put, ongoing criminal activity in plain view of the CI and articulated in a search warrant affidavit to a neutral and detached judge is the strongest form of proof in American jurisprudence to satisfy the Constitutional probable cause requirement.  The CI did not have to be *inside* the home to see Defendant pulling drugs from the car.  Moreover, "the sale of drugs from the residence" does not have to literally construed from "inside" the residence. A commonsense approach could interpret that to mean from the front door, the yard, etc.  Notably, Defendant does not include any witness statements, affidavits, or evidence of any kind that would support his theory.  Defendant Lane and his live-in girlfriend testified that no one else visited the house in the 72 hours before the execution of the search warrant.  The Court does not credit Lane or his girlfriend in this respect.  Lane also said he did leave his home and go to work for 6 or 7 hours each day.  Further, nothing about Lane or his girlfriend's testimony indicates that a passerby or someone in the general vicinity would be unable to view activity on the premises.  Finally, Lane provides no evidence that Officer Cole knew or should have known at the time he executed his affidavit that the CI was unreliable.  He provides no evidence that the CI provided false information concerning him to law enforcement in the past.  More importantly, SGT Cole testified that the CI has been reliable 10-12 times in the past which the Court finds credible.

The Supreme Court emphasized that probable cause is not a finely tuned standard such as proof beyond a reasonable doubt or by a preponderance of the evidence and that a magistrate's probable cause finding is entitled to great deference.  *Gates*, 462 U.S. at 235-236, 103 S. Ct. at 2330-31.  Moreover, the evidence supporting probable cause "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law

enforcement." *Id.* at 232, 103 S. Ct. at 2329 (citation omitted).

The court finds the CI, by virtue of his track record, has been proven to be reliable and the information relied upon by Cole was sufficiently specific and corroborated by law enforcement to establish probable cause for the warrant to issue.

## C.      **Good Faith**

Lastly and in the alternative, even if the necessity finding by Judge Moulton was in error, the *Leon* good faith exception to the Exclusionary Rule applies in this case.  *See United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984).  The *Leon* good faith exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Robinson*, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citing *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002)); *see also United States v. Mathis*, 767 F.3d 1264, 1276-77 (11th Cir. 2014) (reiterating principles of *Leon*).  The good faith exception also applies to wiretap applications and orders.  *See United States v. Malekzadeh*, 855 F.2d 14982, 1497 (11th Cir. 1988).  There are only four situations where the good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient- i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

*Martin*, 397 F.3d at 1313 (citing *Leon*, 468 U.S. at 923, 104 S. Ct. 3405).  Defendant does not assert any argument under the second, third, or fourth situations.  Therefore, the Court looks to the

other first situation.

Lane does assert SGT Cole provided misleading information to Judge Moulton regarding the CI's presence in the house.  However, as discussed previously, the Court has rejected Defendant's assertion, found the information from the CI to be credible, and the Cole did not mislead the judge prior to the issuance of the warrant.  Therefore, the Court finds the first situation does not apply in the case at hand.

## IV.    CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's *Motion to Suppress Evidence* (Doc. 20, filed 11/7/17) be **DENIED**.

It is further **ORDERED** that the parties file any objections to this Recommendation on or before **December 20, 2017.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 6th day of December, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE